**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

3M COMPANY,

              Plaintiff,

    vs.

ZACHARY PUZNAK,
ZENGER LLC d/b/a
ZEROAQUA, and
JOHN DOE 1 THROUGH 10,
all of whose true names are unknown.

              Defendants.

**CASE NO. 1:20-cv-1287**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff 3M Company ("3M" or "Plaintiff"), by and through its undersigned attorneys, as and for its Complaint against Defendants Zachary Puznak, Zenger LLC d/b/a ZeroAqua, and John Does 1 through 10 (collectively, "Defendants"), hereby alleges as follows based on knowledge of 3M's own actions, and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.     This lawsuit concerns Defendants' unauthorized use of 3M's famous trademarks to perpetrate a false and deceptive price-gouging scheme on unwitting customers and consumers, including the State of Indiana, during the global COVID-19 pandemic.

2.     Defendants falsely claimed to be receiving the "counsel of executives from 3M" while seeking between $285 million and $14.25 billion to sell much-needed respirators to the State of Indiana as an "Easter gift."  As part of the scheme, to bolster their credibility, Defendants falsely claimed to be working through "two different 3M reps."  When the Chief of Staff of the Indiana Economic Development Corporation asked Defendants to provide proof of their affiliation with 3M, Defendants responded that "nobody [from 3M] has time or interest . . . in satisfying . . . paranoid irrationality" and that the State's diligence was "quite sad . . . for the people of Indiana."

3.      These representations and others like them are entirely false. 3M has no affiliation whatsoever with Defendants, whose fraudulent scheme during a global pandemic represents not only a new low in rapacious profiteering, but also endangers lives by diverting state officials from legitimate sources of much-needed respirators.

4.      3M brings this lawsuit to ensure that, at a bare minimum, its famous marks are not damaged by being used in connection with a criminal scheme to defraud. As the Chief of Staff to the Indiana Economic Development Corporation told 3M, "it seems [Defendants] are trying to scam a lot of people."

5.      In addition to the damages and injunctive relief sought in this complaint, 3M is in the process of referring the matter to state and federal law enforcement officals.

## BACKGROUND

6.      Throughout its history, 3M has been providing state-of-art, industry-leading scientific and medical products to consumers throughout the world under its famous 3M marks. Based on this longstanding, continuous use, consumers associate the 3M marks uniquely with 3M. Now, more than ever, consumers are also relying on the famous 3M marks to indicate that the products offered thereunder are of the same superior quality that consumers have come to expect over the past century. This is especially true with respect to 3M's numerous industry-leading healthcare products and personal protective equipment ("PPE"), including Plaintiff's 3M-brand N95 respirators.

7.      Healthcare professionals and other first responders are heroically placing their health and safety on the line to battle COVID-19. To assist in the battle, 3M is working around the clock to supply healthcare workers, first responders, and critical infrastructure operators with millions of 3M-brand respirators. Beginning in January, 3M began increasing its production of 3M-brand respirators, doubling its global output to a rate of 1.1 billion per year, or 100 million per month. This includes 35 million per month being manufactured and distributed in the United States. 3M also is investing in the capital and resources to enable it to double its respirator production capacity once again, to 2 billion globally by the end of 2020. In the United States alone, 3M plans to be

producing respirators at a rate of 50 million per month by June 2020. And to supplement its U.S. production, 3M also has announced a plan to import 166.5 million 3M-brand respirators from 3M's production facilities overseas. In the U.S., more than 90 percent of 3M's respirators are going to healthcare and public health users, with the remaining deployed to other critical industries such as energy, food and pharmaceuticals. The U.S. distribution of 3M-brand respirators is being coordinated with the Federal Emergency Management Agency, which is basing allocation decisions on the most urgent needs.

8.      The demand for 3M-branded respirators has grown exponentially in response to the pandemic, and 3M has been committed to seeking to meet this demand while keeping its respirators priced fairly. 3M is working with customers, distributors, governments, and medical officials to direct 3M supplies to where they are needed most. Importantly, 3M has **not** increased the prices that it charges for 3M respirators as a result of the COVID-19 outbreak.

9.      Unfortunately, any number of wrongdoers seek to exploit the current public health emergency and prey on innocent parties through a variety of scams involving 3M N95 respirators and other products in high demand. These scams include unlawful price-gouging, fake offers, counterfeiting, and other unfair and deceptive practices—all of which undercut the integrity of the marketplace and constitute an ongoing threat to public health and safety.

10.      In response to fraudulent activity, price-gouging and counterfeiting related to N95 respirators that has spiked in the marketplace in response to the pandemic, 3M is taking an active role to combat these activities. 3M's actions include working with law enforcement authorities around the world, including the U.S. Attorney General, state Attorneys General and local authorities to combat price-gouging. 3M has also created a website where people can report potential price-gouging and the "3M COVID-19 Fraud hotline" for end-users and purchasers of 3M products in the United States and Canada to call for information and to help detect fraud and avoid counterfeit products. Moreover, 3M is publishing information about its anti-price-gouging and counterfeiting efforts on the 3M website, including disclosure of 3M's list prices for its N95 respirators and the web address and phone numbers that can be used to identify 3M authorized distributors and dealers in the United States and Canada. Further information about 3M's efforts are set forth in the 3M

press release and publication attached hereto as **Exhibits 1 and 2**. This Complaint is another part of these efforts.

11.     Despite 3M's extensive efforts during COVID-19, deplorable pandemic profiteers continue their quests to take advantage of healthcare workers, first responders, and others in a time of need and trade off the fame of the 3M brand and marks. Defendants are prime examples of that behavior.

12.     On April 14, 2020, Defendants wrote Earl Goode, the Chief of Staff to Governor Eric Holcomb, that he had "a nice Easter gift for you and the State of Indiana."  In an email with the subject line, "3M N95 GOVT Special Rate," Defendants offered the State "[a]n opportunity to provide Government end users FDA/CE 3M N95 1860/8210 at $2.82 each," which is more than double 3M's posted list price. Defendants also claimed to be working to "find procurement solutions with the States of Michigan, Connecticut, New York and Massachusetts."

13.     Defendants' "ZeroAqua" website, attached hereto as **Exhibit 3**, contains an image of a 3M N95 mask and contains the famous 3M logo.

 

14.     On April 14, 2020, several hours after sending the fraudulent offer to Governor Holcomb's Chief of Staff, Defendants conveyed the same offer to Luke Bosso, Senior Vice President and Chief of Staff of the Indiana Economic Development Corporation, the State of Indiana's lead economic development agency. The Indiana Economic Development Corporation, according to its website, is designed to "respond quickly to the needs of businesses" and "aggressively pursue every opportunity that represents a promise for Hoosier jobs." On behalf of the Indiana Economic Development Corporation, Mr. Bosso queried 3M: "Guys, [a]ny chance this

-4-

is real?  They said the masks are in the US and made in the US." *See* **Exhibit 4.**

15.    On April 24, 2020, Defendants wrote Mr. Bosso directly. They offered to sell the State of Indiana between 100 million and 5 billion of 3M's N95 1860 Health Care Particulate Respirator and Surgical Masks. 3M's current annual global production of *all* 3M N95 respirators is 1.1 billion – 3.9 billion *fewer* than the number of just one model that Mr. Puznak again offered to sell the State of Indiana. Defendants sought a total price of between approximately ***$285 million to $14.25 billion*** for the 3M respirators. As an inducement, Defendants offered "10% of the[] order FREE as a bonus," but cautioned that "[t]his order is only good TODAY." *See* **Exhibit 5, pp. 2-3.**

16.    As part of their scheme, Defendants claimed that "[t]he offer was forwarded thru two different 3M reps and the senior of the two has removed the junior rep from the chain to ensure the transaction is compliant with federal margin/ commission guidelines." *See* **Exhibit 5, p. 2**. When pressed on Defendants' affiliation with 3M, Defendants stated that "nobody [from 3M] has time or interest . . . in satisfying . . . paranoid irrationality" and that the diligence was "really quite sad . . . for the people of Indiana." Defendants told the State that they were receiving "the counsel of executives from 3M to 'just forget it and move on.'" *See* **Exhibit 5, p. 1.** These representations in their entirety—including the use of 3M marks on Defendants' website and the claimed affiliation with 3M and its executives—were fraudulent. Defendants have no association with 3M. Defendants were not counseled by 3M executives. It is pure fiction.

17.    Defendants pressed even further when told that 3M had informed the State that Defendants' offer was illegitimate: "Its [sic] like asking the person peeling potatoes on a nuclear sub how nuclear fission ans [*sic*] rocket telemetry work - just because they work on a sub does not mean they are privy to the entire inner working of said vehicle." *See* **Exhibit 6, p. 2.**

18.    In addition to Defendants' scheme to price gouge directed to Indiana, Mr. Puznak sought customers nationally and internationally <u>via his LinkedIn page</u>, where he claimed falsely to be working "direct with 3M to provide supplies exclusively for you." *See* **Exhibit 7.**

19.    3M does not—and will not—tolerate individuals or entities deceptively trading off the fame and goodwill of the 3M brand and marks for criminal gain. This is particularly true against those who seek to exploit the surge in demand for 3M-brand products during the COVID-19 global

pandemic that has already claimed over 200,000 lives worldwide.

20.     Accordingly, to further protect consumers from confusion and mistake, to reduce the amount of time and energy that healthcare providers and procurement officers are forced to waste interacting with such schemes, as well as to forestall any further diminution to the 3M brand and marks' reputation, fame, and goodwill, Plaintiff brings this lawsuit against Defendant for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and unlawful, unfair, and fraudulent business acts and practices. Plaintiff also seeks preliminary and permanent injunctive relief. As described below, any damages, costs, or fees recovered by 3M will be donated to charitable COVID-19 relief efforts.

## THE PARTIES

21.     Plaintiff 3M Company is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144. 3M is a diversified technology company with a global presence and is among the leading manufacturers of products for many of the markets it serves, including PPE such as 3M-brand N95 respirators.

22.     On information and belief, Defendant Zachary Puznak, is a resident of Nevada. On April 14, 2020, he offered an "Easter gift . . . for the State of Indiana" offering to sell up to 100 million 3M N95 respirators. In this email, he identified himself as an agent of Defendant Zenger LLC and provided a Las Vegas phone number. Mr. Puznak sent his email from zach@zeroaqua.com. According to a gofundme.com page entitled Canadian Stranded in Vegas and posted March 16, 2020, a Zachary Puznak claims to have been "[b]uilding out a startup company in Las Vegas the past 5 months" and "[d]own to last scraps in the bank account . . . when the virus issue hit." He asks for "$1000 to feel safe. I don['t know what to do. I can['t fly out. I[']m thinking of renting a car and driving north." *See* **Exhibit 8.**

US.127812695.01



23.     On information and belief, Defendant Puznak recently resided at 335 E. Harmon Ave, Unit 120, in Las Vegas, Nevada, which is the address of the Americana Apartments and Inn.



In an entry on Mr. Puznak's gofundme.com page posted less than one month before the current scheme, Mr. Puznak posted: "[m]y hotel is paid till tomorrow . . . credit is maxed. bank account is negative. Vegas is shutting down. . . . Well that was the knock on the door. I am being evicted from my hotel. Have to pack. Thanks. Bye." *See* **Exhibit 8**.

24.     On information and belief, Defendant Zenger LLC is a Nevada Limited Liability Company. The address of its Managing Member, Dennis Puznak, is 401 Ryland Street, Suite 200-A, Reno, Nevada 89502. Defendant Zenger LLC was first registered to do business in the State of Nevada in 2018.

25.     On information and belief, Zenger LLC and/or Mr. Puznak do business under the name "ZeroAqua."

26.     On information and belief, Defendants John Doe 1 through 10, whose true names are currently unknown, worked in concert with other Defendants in connection with this fraudulent

US.127812695.01

scheme.

## JURISDICTION AND VENUE

27.     The claims for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I – IV, *infra*, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq.* Accordingly, this Court has original and subject-matter jurisdiction over Counts I – IV pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121(a).

28.     The claims for trademark dilution and trademark infringement, asserted in Counts V – VIII, *infra*, arise under Indiana Code §§ 24-2-1-13, 24-2-1-13.5, and 24-2-1-14, and are so related to the federal claims asserted in Counts I – IV, *infra*, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts V – VIII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

29.     This Court also has subject matter jurisdiction on the separate and independent ground of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

30.     Defendants have purposefully availed themselves of the privilege of transacting business within the State of Indiana, including in this District. Defendants have also committed and intentionally directed tortious acts towards residents of the State of Indiana, including in this District. 3M's claims arise out of and relate to Defendants' transaction of business and tortious acts committed within the State of Indiana, including in this District. Based on the foregoing, this Court has long-arm jurisdiction over Defendants. Indiana Rules of Trial Procedure 4.4 and Fed. R. Civ. P. 4(k).

31.     A substantial part of the events giving rise to the claims asserted, *infra*, occurred in this District. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

32.     Defendant is subject to personal jurisdiction in this District. Accordingly, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

-8-

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.     Plaintiff 3M**

33.     3M has grown from humble beginnings in 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and equipment.

**A.     The 3M Brand**

34.     3M offers its vast array of goods and services throughout the world under numerous brands, including, for example: ACE; POST-IT; SCOTCH; NEXCARE; and more. Notwithstanding the widespread goodwill and resounding commercial success enjoyed by these brands, 3M's most famous and widely recognized brand is its eponymous "3M" brand.

35.     The 3M brand is associated with products and materials for a wide variety of medical devices, supplies, PPE, including, for example: respirators; stethoscopes; medical tapes; surgical gowns, blankets, and tape; bandages and other wound-care products; and more. As such 3M-branded products are highly visible throughout hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and integrity associated with the 3M brand.

**B.     The Famous "3M" Marks**

36.     Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the inset 3M design mark (together, the "3M Marks"):



37.     For decades, products offered by under the 3M Marks have enjoyed enormous

US.127812695.01

commercial success (including, without limitation, its 3M-brand N95 respirator). Indeed, in 2019, alone, sales of products offered under the 3M Marks exceeded several hundred million USD.

38.     Over the same period of time, products offered under the 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

39.     Based on the foregoing, consumers associate the 3M Marks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the 3M Marks. Based on the foregoing, the 3M Marks have also become famous among consumers in the United States.

40.     To strengthen 3M's common-law rights in and to its famous 3M Marks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"), and (ii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration"). ***See* Exhibits 9 and 10.**

41.     The '329 and '534 Registrations are valid, in effect, and on the Principal Trademark Register.

42.     The '329 and '534 Registrations are "incontestable" within the meaning of 15 U.S.C. § 1065. Accordingly, the '329 and '534 Registrations constitute conclusive evidence of: (i) 3M's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) 3M's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.

43.     Plaintiff's famous 3M Marks do more than identify 3M as the exclusive source of goods and services offered thereunder. Indeed, the famous 3M Marks also signify to consumers that 3M-brand products offered under the 3M Marks are of the highest quality and adhere to the strictest quality-control standards. Now, more than ever, consumers rely on the famous 3M Marks' ability to signify that products offered under the 3M Marks are of the same high quality that consumers have come to expect of the 3M brand over the past century.

US.127812695.01

### C.      3M's Extensive Efforts to Assist with the Battle Against COVID-19

44.      Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19. As 3M states on the homepage of its website, it is "committed to getting personal protective equipment to healthcare workers":



45.      Among the PPE that 3M is providing to the heroic individuals on the front lines of the battle against COVID-19 are its 3M-brand N95 respirators.

46.      Inset, below, is an image of 3M's branded Model 8210 respirator, one of several dozen different respirators Plaintiff manufactures:



US.127812695.01

47.     A nearly identical image—posted without 3M's authorization or approval—appears on Defendants' website and contains the 3M design mark:



48.     Authentic N95 respirators reduce exposure to airborne biological particles and liquid contamination when appropriately selected, fitted, and worn.

49.     Based on the exponential increase in demand for 3M-branded N95 respirators, 3M has invested in the necessary capital and resources to double its annual production of 1.1 billion N95 respirators. *See* Exhs. 1, 2. **What 3M has *not* done in the face of the global COVID-19 pandemic is increase its prices**. *See id*.

50.     Unfortunately, certain third parties do not share 3M's sense of civic responsibility during this time of crisis. Indeed, opportunistic third parties are seeking to exploit the increased demand for 3M-branded N95 respirators by offering to sell them for exorbitant prices, selling counterfeit versions of them, and accepting money for 3M-brand N95 respirators despite having no product to sell or never intending to deliver the product in the first place.

51.     Accordingly, to protect both consumers and healthcare workers on the front lines of the COVID-19 battle from deception and inferior products, to reduce time wasted by healthcare providers and procurement officers on scams, as well as to protect 3M's goodwill, reputation, and carefully curated 3M brand, 3M is working diligently with law enforcement, retail partners, and others to combat unethical and unlawful business practices related to 3M-brand N95 respirators. For example, in late-March 2020, 3M's Chief Executive Offer, Mike Roman, sent a letter to U.S. Attorney General, William Barr, and the President of the National Governor's Association, Larry Hogan of Maryland, to offer 3M's partnership in combatting price-gouging. As shown in the inset

image, additional examples of 3M's efforts to combat price-gouging, counterfeiting, and other unlawful conduct during COVID-19 include:

    a.   3M posted on its website the list price for its 3M-brand N95 respirators so that consumers can readily identify price-gouging (*See* **Exhibit 11**);

    b.   3M created a form on its website that consumers can use to report suspected incidents of price-gouging and counterfeiting (*See* **Exhibit 12**); and

    c.   3M created a fraud "hotline" that consumers can call to report suspected incidents of price-gouging and counterfeiting.



## II.    Defendants' Unlawful Conduct

52.    Despite 3M's extensive measures to combat price-gouging and counterfeiting of its 3M-brand N95 respirators, illicit activities by bad actors continue. Defendants are a prime example of this unlawful behavior, which is damaging the 3M brand and public health and safety in a time of unprecedented crisis.

US.127812695.01

53.     On April 14, 2020, Defendants wrote Earl Goode, Indiana Governor Eric Holcomb's Chief of Staff, offering "a nice Easter gift for you and the State of Indiana" in the form of 3M N95 respirators at more than double the posted list price:

-----Original Message-----
From: zach@zeroaqua.com [mailto:zach@zeroaqua.com]
Sent: Tuesday, April 14, 2020 12:11 AM
To: Goode, Earl <EGoode@gov.IN.gov>
Cc: Holwerda, Rebecca <RHolwerda@gov.IN.gov>
Subject: 3M N95 GOVT Special Rate

**** This is an EXTERNAL email. Exercise caution. DO NOT open attachments or click links from unknown senders or unexpected email. ****
_____

Hi Earl, We have what i believe is a nice Easter gift for you and the State of Indiana. An opportunity to provide Government end users FDA/CE 3M N95 1860/8210 at $2.82 each

These masks are only available to END users - State Governments, Hospitals etc. There is no minimum order required max 100mm lead time is 14 days for delivery on the 1860 and 28 days on the 8210

Terms are: an LOI/POF / Purchase order stating the exact number of masks requested, on state letterhead declaring end user status and not for export from the US Upon receipt of these docs you, the Buyer will be provided with 1."proof of life"  2. Lot numbers will be exchanged and SGS reports provided. 3.State Comptroller/attorneys/representative then will discuss directly with sellers attorney the exchange of funds. These are CE/FDA 3M N95 masks made in the USA and currently in the USA

This is our first correspondence with you, we have been working to find procurement solutions with the States of Michigan, Connecticut, New York and Massachusetts, have a DUNS number and are happy to set up with your procurement folks.

This opportunity just came up this evening (Monday 13th) and the consignment likely wont last long - Look forward to hearing from you with any questions or assisting w/ an order placement.

Kindest
Zach Puznak
Zenger LLC
702.824.1617

US.127812695.01

54.     Upon receiving a [p]urchase order . . . on state letterhead," Defendants offered to provide the State of Indiana with "proof of life"— a term associated with confirmation during ransom negotiations that the hostage is, in fact, still alive. Defendants provided the Governor's office with a Las Vegas phone number that is also associated with the "Order" page on the Defendants' ZeroAqua website. *See* **Exhibit 13**. That page also includes a color photo of a 3M-branded 1860S N95 respirator along with the "ZeroAqua" logo:



55.     On April 24, 2020, Defendants again contacted the State of Indiana, this time through Luke Bosso, the Senior Vice President and Chief of Staff of the Indiana Economic Development Corporation. Defendants offered the State updated terms contingent, in part, on the signing of a non-circumvention and non-disclosure agreement and a complicated series of escrow arrangements that purportedly culminate in a "transfer from Seller's escrow to 3M directly."

US.127812695.01

US 3M 1860s:
1. Minimum 100 million 3M 1860's up to 5 billion total.
2. All masks produced in the US.
3. Total order is produced and delivered over a 6 week period.
4. Price: $2.85/each CIF
5. Seller will not sell to Brokers directly. All Brokers involved must sign an NCNDA with Seller.
6. Upon signing, Brokers will put the real Buyer in direct contact with Seller.
7. Final end buyer must be a government agency or licensed medical provider.
8. Process:
- Buyer's Letter of Intent must be provided and made out to:
- ******
    - Funds for the total order must be in Buyer's escrow.
    - Proof of funds must be provided on Buyer's escrow attorney's letterhead.
    - Paperwork is approved by Seller and quote provided to Buyer.
    - After quote is given to Buyer, all Brokers will sign a commission distribution agreement with Seller's escrow.
    - Sales Purchase Agreement is signed by Buyer.
    - After a tranche is produced, an SGS inspection report and Airway Bill will be provided to the Buyer.
    - Funds for only that tranche must be transferred from Buyer's escrow to Seller's escrow.
    - Funds will be held in Seller's escrow until tranche reaches its destination and the Buyer approves / confirms satisfactory delivery.
    - Upon Buyer approval / confirmation, funds will transfer from Seller's escrow to 3M directly.
    - Delivery is CIF Airfreight to US destinations only.
1. This offer is only good TODAY 4/23/2020.
2. If order is placed today, Buyer will receive 10% of their order for FREE as a bonus. For example, if Buyer orders 100 million masks, they will receive 10 million masks for free by the end of their order, totaling 110 million masks.

56. The terms Defendants offered the State of Indiana included a minimum of 100 million 3M N95 respirators "up to 5 billion total" at $2.85 each. This represents a requested payment of between $285 million and $14.25 billion. Defendants did offer an incentive, as if they were a huckster at the state fair: "[i]f order is placed today, Buyer will receive 10% of their order for FREE as a bonus."

57. On behalf of the Indiana Economic Development Corporation, Mr. Bosso asked Defendants for "confirmation from 3M [that] these are real." In response, Defendants asserted that

"offer was forwarded thru *[sic]* two different 3M reps and the senior of the two has removed the junior rep from the chain to ensure the transaction is compliant with federal margin/ commission guidelines."  Defendants, trying to ramp up the pressure, asked Mr. Bosso: "Are you going to be in a position to move on this as I'm working now to have you on a call with them this morning."  Once again, on behalf of the Indiana Economic Development Corporation, Mr. Bosso responded that "We would need an email from corporate 3M to move forward."  Defendants responded: "That's fine."

58.     Defendants ultimately refused to provide Mr. Bosso with a document confirming that Defendants were affiliated with 3M. Instead, Defendants told Mr. Bosso that 3M executives had told Defendants not to go forward with the transaction:

> **From:** Zachary Puznak <zachary.puznak@gmail.com>
> **Date:** April 24, 2020 at 3:48:27 PM EDT
> **To:** "Bosso, Luke (IEDC)" <LBosso@iedc.IN.gov>
> **Subject: Re: 3M US internal offer**
>
> i don't think anything is going to satisfy you at this point. And it's really quite sad  Especially for the people of Indiana.
>
> I've clearly explained how nobody has time or interest from the company in satisfying the paranoid irrationality of folks exhibiting this level of paranoia
>
> I'm personally insulted that you are essentially calling me a liar
>
> And against the counsel of executives from 3M to "just forget it and move on" i have made every effort to deliver you the reality of the situation and much needed ppe but you refuse to deal with  reality and like a child insist on it conforming to your wishes and your wishes alone.
>
> Best of luck managing the states  circumstances. It appears you're going to need it.

59.     Defendants claimed that "nobody [at 3M] has time or interest . . . in satisfying . . . paranoid irrationality" and "I'm personally insulted that you are essentially calling me a liar."  He claimed to be delivering "the reality of the situation" of PPE "against the counsel of executives from 3M to 'just forget it and move on."  Defendants closed: "[b]est of luck managing the state[']s circumstances. It appears you're going to need it."

60.     In a subsequent communication, Defendants told Mr. Bosso that information

contrary to his offer could only come from a "low level nobody with no influence or knowledge who works at 3M" instead of the "official 3M brokers that I [*sic*] liaise with."  Defendants, plainly upset that they were not going to successfully extract any cash from the taxpayers of Indiana, ended the communication string by chastising Mr. Bosso for "stubborn refusal to learn anything new about today[']s reality."

61.     Based on the foregoing, 3M seeks relief against Defendant for federal and state trademark infringement, false association, false endorsement, false designation of origin, trademark dilution, and unlawful, unfair, and fraudulent business acts and practices.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*

*(Infringement of the Federally Registered 3M Marks)*

62.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 61 of the Complaint as though set forth fully herein.

63.     Count I is a claim for trademark infringement under 15 U.S.C. § 1114.

64.     3M is the exclusive owner of each of the federally registered 3M Marks.

65.     3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand N95 respirators.

66.     3M's exclusive rights in and to each of the 3M Marks predate any rights that Defendant could establish in and to any mark that consists of "3M" in whole and/or in part.

67.     Both of the 3M Marks are fanciful and/or arbitrary when used for respirators and, therefore, are inherently distinctive.

68.     Both of the 3M Marks identify 3M as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks have acquired distinctiveness.

US.127812695.01

69.     Defendants are using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-branded N95 respirators, including, for example, in communications to healthcare providers listing the products that Defendants purportedly have available for sale.

70.     Defendants' use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendants are 3M, and/or whether Defendants are licensees, authorized distributors, and/or affiliates of 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

71.     Defendants' use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendants' products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

72.     Defendants' use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendants and/or Defendants' products originate with, and/or are sponsored or approved by, and/or offered under a license from, 3M or vice versa.

73.     3M has not consented to the use of its famous 3M Marks by Defendants.

74.     Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of the 3M Marks, Defendants had actual and constructive knowledge of 3M's superior rights in and to the 3M Marks when Defendants began using the 3M Marks as part its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

75.     Upon information and belief, Defendants adopted and used the 3M Marks in furtherance of Defendants' willful, deliberate, and bad-faith scheme of trading upon the extensive

consumer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

76.     Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its unauthorized use of the 3M Marks, to which Defendants are not entitled at law or in equity.

77.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a).

78.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by 3M is exacerbated by the fact that Defendants are advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when 3M's products are necessary to protect public health. Such conduct has inspired intense public criticism of the way 3M's respirators are being distributed and sold during the COVID-19 pandemic and significant confusion about 3M's role in the marketplace for masks that are essential to safeguarding public health. Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendants' conduct imminently and irreparably harms 3M's brand.

79.     3M has no adequate remedy at law.


## SECOND CLAIM FOR RELIEF

*(Unfair Competition, False Endorsement, False Association, and False Designation of Origin*

*Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))*

*(Use of the 3M Marks)*

80.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 79 of the Complaint as set forth fully herein.

81.     Count II is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

US.127812695.01

82.     Upon information and belief, Defendants' acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

83.     Upon information and belief, Defendants' use of Plaintiff's famous 3M Marks to advertise, market, offer for sale, and/or sell purported 3M-brand N95 respirators to consumers at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

84.     Defendants also falsely held themselves out to be agents of 3M to sell and/or distribute 3M-branded products, when this is not the case.

85.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

86.     3M has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

*(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*

*(Dilution of the Famous 3M Marks)*

87.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 86 of the Complaint as though set forth fully herein.

88.     Count III is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

89.     The 3M Marks were famous before and at the time Defendants began using the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M's branded N95 respirators).

90.     Defendants' use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M's branded N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' established selling power and value will be whittled away.

US.127812695.01

91.     Defendants' use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M's branded N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' ability to identify 3M as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M's branded N95 respirators) will be whittled away.

92.     Defendants' use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M's branded N95 respirators) at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically is likely to dilute the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks (including, without limitation, 3M's branded N95 respirators), will be whittled away.

93.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

94.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by 3M is exacerbated by the fact that Defendants are advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when 3M's products are necessary to protect public health. Such conduct has inspired intense public criticism of the way 3M's respirators are being distributed and sold during the COVID-19 pandemic and significant confusion about 3M's role in the marketplace for masks that are essential to safeguarding public health. Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendants' conduct imminently and irreparably harms 3M's brand.

95.     3M has no adequate remedy at law.

US.127812695.01

## FOURTH CLAIM FOR RELIEF

*(False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))*

96.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 –95 of the Complaint as though set forth fully herein.

97.     Count IV is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

98.     The statements that Defendants made to the State of Indiana and various of its agents contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendants and/or the products that Defendants allegedly had available for sale and constitute commercial advertising and/or commercial promotion.

99.     Upon information and belief, Defendants' acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

100.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by 3M is exacerbated by the fact that Defendants are advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when 3M's products are necessary to protect public health. Such conduct has inspired intense public criticism of the way 3M's respirators are being distributed and sold during the COVID-19 pandemic and significant confusion about 3M's role in the marketplace for masks that are essential to safeguarding public health. Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendants' conduct imminently and irreparably harms 3M's brand.

101.     3M has no adequate remedy at law.

US.127812695.01

## FIFTH CLAIM FOR RELIEF

*(Trademark Dilution, Indiana Code §§ 24-2-1-13.5)*

*(Dilution of the Famous 3M Marks)*

102.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 101 of the Complaint as though set forth fully herein, including, but not limited to the Third Claim for Relief above.

103.     Count V is for trademark dilution under Indiana Code § 24-2-1-13.5.

104.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark dilution under Indiana Code § 24-2-1-13.5.

105.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

106.     3M has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

*(Trademark Infringement under Indiana Code IC 24-2-1-13 et seq.)*

*(Use of the 3M Marks)*

107.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 106 of the Complaint as though set forth fully herein.

108.     Count VI is for trademark infringement under Indiana Code IC 24-2-1-13 et seq.

109.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of Indiana law.

110.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

111.     3M has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**

*(Indiana Crime Victim's Relief Act– Indiana Code § 35-24-3-1*
*Deception – Indiana Code §§ 35-43-5-3(a)(6), 35-43-5-3(a)(12))*

112.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 111 of the Complaint as though set forth fully herein.

113.    By engaging in the unlawful, knowing, intentional, deliberate, willful, and malicious actions described above, Defendants have misrepresented their identities and the quality and identity of their products to a governmental entity with the intent to fraudulently obtain a contract.

114.    Defendants have therefore committed deception under Indiana Code Sections 35-43-5-3(a)(6) and 35-43-5-3(a)(12).

115.    As a direct and proximate result of Defendants' actions described herein, 3M has suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill, unless and until the Court preliminarily and permanently enjoins Defendants' actions. 3M has no adequate remedy at law with respect to those of Defendants' actions that are ongoing.

116.    As a direct and proximate result of Defendants. actions described herein, 3M has suffered, and will continue to suffer, monetary damages and pecuniary losses in amounts to be proven at trial.

117.    Under the Indiana Crime Victims' Relief Act, Indiana Code Section 35-24-3-1, a person that suffers pecuniary loss as a result of the violation of Indiana Code Sections 35-43 *et seq*., may bring a civil action against the person who caused the loss for treble damages, costs of the action, and reasonable attorneys' fees.

118.    As set forth herein, Defendants have violated Indiana Code Section 35-43-5-3 through Defendants' knowing, intentional, deliberate, willful, and malicious commission of deception.

119.    3M is the victim of Defendants' deception and other knowing, intentional, deliberate, willful, and malicious actions set forth herein, and, as a result, has suffered, and will continue to suffer monetary damages and pecuniary losses in amounts to be proven at trial.

120.    3M is accordingly entitled to an award of those actual damages as well as statutory treble damages, costs, and reasonable attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

*(Indiana Crime Victim's Relief Act – Indiana Code § 35-24-3-1*
*Conversion – Indiana Code § 35-43-4-3)*

121.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 120 of the Complaint as though set forth fully herein.

122.    By engaging in the unlawful, knowing, intentional, deliberate, willful, and malicious actions described above, Defendants have knowingly or intentionally exerted unauthorized control over 3M's valuable property—the 3M Marks and the goodwill associated with the same—by making unauthorized use of them in connection with a fraudulent offering of goods. Such unauthorized use was for Defendants' benefit and interfered with 3M's control over the 3M Marks and the accompanying goodwill.

123.    As the owner of the 3M Marks and the accompanying goodwill, 3M alone has the right to control and authorize the use of the 3M Marks.

124.    Under the Indiana Crime Victims' Relief Act, Indiana Code Section 35-24-3-1, a person that suffers pecuniary loss as a result of the violation of Indiana Code Sections 35-43 *et seq.*, may bring a civil action against the person who caused the loss for treble damages, costs of the action, and reasonable attorneys' fees.

125.    As set forth herein, Defendants have violated Indiana Code Section 35-43-4-3 through Defendants' exercise of unauthorized control over 3M's valuable property—the 3M Marks and the goodwill associated with the same.

126.    3M is the victim of Defendants' conversion and other knowing, intentional, deliberate, willful, and malicious actions set forth herein, and, as a result, has suffered, and will continue to suffer, monetary damages and pecuniary losses in amounts to be proven at trial.

127.    3M is accordingly entitled to an award of those actual damages as well as statutory treble damages, costs, and reasonable attorneys' fees.

US.127812695.01

### NINTH CLAIM FOR RELIEF

*(Indiana Crime Victim's Relief Act – Indiana Code § 35-24-3-1*
*Theft – Indiana Code § 35-43-4-2)*

128.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 127 of the Complaint as though set forth fully herein.

129.    By engaging in the unlawful, knowing, intentional, deliberate, willful, and malicious actions described above, Defendants have knowingly or intentionally exerted unauthorized control over 3M's valuable property—the 3M Marks and the goodwill associated with the same—with the intent to deprive 3M of a part of their value and by making unauthorized use of the 3M Marks in connection with a fraudulent offering of goods. Such unauthorized use was for Defendants' benefit and interfered with 3M's control over the 3M Marks and the accompanying goodwill.

130.    As the owner of the 3M Marks and the accompanying goodwill, 3M alone has the right to control and authorize the use of the 3M Marks.

131.    Under the Indiana Crime Victims' Relief Act, Indiana Code Section 35-24-3-1, a person that suffers pecuniary loss as a result of the violation of Indiana Code Sections 35-43 *et seq*., may bring a civil action against the person who caused the loss for treble damages, costs of the action, and reasonable attorneys' fees.

132.    As set forth herein, Defendants have violated Indiana Code Section 35-43-4-2 through Defendants' exercise of unauthorized control over 3M's valuable property—the 3M Marks and the goodwill associated with the same.

133.    3M is the victim of Defendants' theft and other knowing, intentional, deliberate, willful, and malicious actions set forth herein, and, as a result, has suffered, and will continue to suffer, monetary damages and pecuniary losses in amounts to be proven at trial.

134.    3M is accordingly entitled to an award of those actual damages as well as statutory treble damages, costs, and reasonable attorneys' fees.

US.127812695.01

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on Defendants' conduct complained of, herein, Plaintiff asks this Court:

A.      To enter an Order, finding in Plaintiff's favor on each Claim for Relief asserted herein;

B.      Pursuant to 15 U.S.C. § 1116:

1.   To preliminarily and permanently enjoin Defendants, their agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the 3M Marks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-brand N95 respirator Marks;

2.   To preliminarily and permanently enjoin Defendants, their agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing themselves as being distributors, authorized retailers, and/or licensees of 3M and/or any of 3M's products (including, without limitation, 3M-brand N95 respirator) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products; and

3.   To order Defendants to file with the Court and serve upon Plaintiff's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

C.      Pursuant to 15 U.S.C. § 1117:

1.   To order Defendants to provide 3M with a full accounting of all manufacture, distribution and sale of products under the 3M Marks (including, without limitation, 3M-brand N95 respirators), as well as all profits derived therefrom;

2.   To order Defendants to disgorge and pay to 3M – so as to be donated charitably pursuant to subpart I, *infra* – all of Defendants' profits derived from the sale of infringing goods offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators);

US.127812695.01

3. To award 3M—so as to be donated charitably pursuant to subpart I, *infra*—treble damages in connection with Defendants' infringement of the 3M Marks;

4. To find that Defendants' acts and conduct complained of herein render this case "exceptional"; and

5. To award 3M—so as to be donated charitably pursuant to subpart I, *infra*—its costs and reasonable attorneys' fees incurred in this matter;

D. Pursuant to 15 U.S.C. § 1118, to order the destruction of any unauthorized goods and materials within the possession, custody, and control of Defendants that bear, feature, and/or contain any copy or colorable imitation of 3M's Marks;

E. Pursuant to Indiana Code § 35-24-3-1:

1. To award 3M—so as to be donated charitably pursuant subpart I, *infra*, treble damages in connection with Defendants' illegal acts;

2. To award 3M-- so as to be donated charitably pursuant to subpart HI, infra—its costs and reasonable attorneys' fees incurred in this matter;

F. To award restitution as authorized by law;

G. To award Plaintiff pre-judgment and post-judgment interest against Defendants;

H. To award Plaintiff such other relief that the Court deems just and equitable;

I. To order that all monetary payments awarded to Plaintiff be donated to a COVID-19 charitable organization(s)/cause(s) of Plaintiff's choosing.

********************

US.127812695.01

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury for all issues so triable pursuant to Fed. R. Civ. P. 38(b) and 38(c).

**FAEGRE DRINKER BIDDLE & REATH LLP**

Dated:  April 30, 2020

*/s/ Kathy L. Osborn*

Kathy L. Osborn, #21927-53
Kathy.osborn@faegredrinker.com
Louis T. Perry, #25736-49
Louis.perry@faegredrinker.com
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
(317) -237-0300

and

Kerry L. Bundy (to be admitted *pro hac vice*)
Kerry.bundy@faegredrinker.com
John W. Ursu (to be admitted *pro hac vice*)
John.ursu@faegredrinker.com
Isaac B. Hall (to be admitted *pro hac vice*)
Isaac.hall@faegredrinker.com
Kiera K. Murphy (to be admitted *pro hac vice*)
Kiera.murphy@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

*Attorneys for Plaintiff 3M Company*