UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

3M COMPANY,

      Plaintiff,

vs.

ZACHARY PUZNAK,
ZENGER LLC d/b/a
ZEROAQUA, and
JOHN DOE 1 THROUGH 10,
all of whose true names are unknown.

      Defendants.

CASE NO. 1:20-cv-1287-RLY-TAB

### ORDER ON PLAINTIFF 3M COMPANY'S APPLICATION FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANT ZENGER LLC d/b/a ZEROAQUA

**WHEREAS**, the Court, having considered Plaintiff 3M Company's ("3M") Memorandum of Law Support in Support of its Application for a Temporary Restraining Order and Preliminary Injunction (Dkt. No. 15) against Defendant Zenger LLC d/b/a ZeroAqua ("Defendant"), together with the supporting Declarations of Charles Stobbie, David A. Crist, Kathy L. Osborn, and Luke Bosso, as well as the record and proceedings to date in the above-captioned action, hereby finds as follows:

    1.    Defendant is not an authorized distributor, vendor, agent, or representative of 3M. Defendant is also not authorized to solicit orders of any size for 3M's N95 respirators (or any other goods or services). Nonetheless, on or about April 14, 2020, Defendant wrote Earl Goode, Indiana Governor Eric Holcomb's Chief of Staff, offering "a nice Easter gift for you and the State of Indiana" in the form of 3M N95 respirators at more than double the posted list price. Defendant stated that it would sell the respirators for $2.82 (later raised to $2.85 in an April 24, 2020

communication) per "mask" (respirator) with a minimum 100 million unit order. In communications with the State of Indiana, Defendant repeatedly represented that it was affiliated with 3M. It falsely indicated that, via a complicated escrow transaction, the purchase price would be transferred to "3M directly". It stated that the offer was "forwarded thru [sic] two different 3M reps." It reproduced the famous standard character "3M" mark and 3M design mark **3M** (the "3M Marks") on ZeroAqua website's "order" page. And, when procurement officials became suspicious, Defendant claimed that 3M executives instructed it not to move forward with the transaction due to those officials' "paranoid irrationality". Though the State of Indiana ultimately declined to enter into a business relationship with Defendant, Defendant's communications indicated that it was working with the States of Michigan, Connecticut, New York, and Massachusetts on similar deals.

2.  3M cannot control the quality of the products that Defendant purports to sell under the 3M Marks. Additionally, the harm to 3M's reputation and the 3M brand of being associated with price-gouging and/or raising the prices of its N95 respirators during the global COVID-19 pandemic is immeasurable.

3.  Based on the foregoing, 3M is likely to suffer irreparable harm in the absence of a preliminary injunction. Additionally, given Defendant's actions, it is appropriate to require sworn compliance with this Order.

4.  3M owns incontestable federal trademark registrations for its 3M Marks. Accordingly, 3M is likely to establish the validity of its 3M Marks.

5.  3M also is likely to establish that Defendant's use of the 3M Marks creates a likelihood of confusion about the source and/or quality of the products that Defendant is offering to sell, and/or whether Defendant has an association or affiliation with 3M. 3M has been using its

3M Marks for decades.  During this period, 3M has invested hundreds of millions of dollars into advertising and promoting a vast array of goods and services under its 3M Marks, including its N95 respirators.  Defendant is trading off the widespread commercial recognition and goodwill of the 3M Marks in connection with offering to sell products that 3M is widely known for manufacturing and selling, namely, N95 respirators.  Accordingly, it is no surprise that Defendant caused Indiana government procurement officials confusion regarding its affiliation with 3M.

6. Based on the foregoing, 3M is likely to succeed on the merits of its claims for federal trademark infringement, unfair competition, false association, false endorsement, and false designation of origin under Sections 32 and 43(a)(1)(A) of the Lanham Act, as well as its claims for trademark infringement, and unfair competition, under Indiana state and common law.

7. Defendant cannot be heard to complain about having to refrain from engaging in trademark infringement, unfair competition, and price-gouging.  3M, on the other hand, faces irreparable harm if Defendant's conduct continues.

8. Based on the foregoing, the balance of hardships favors 3M.

9. The public has an interest in avoiding confusion about the source and quality of goods and services.  This is especially true during the global COVID-19 pandemic, when consumers, including experienced governmental procurement officials, are relying on the 3M Marks to indicate that goods and services offered thereunder originate from 3M, and are of the same quality that consumers have come to expect of the 3M brand.

10. Based on the foregoing, the issuance of a preliminary injunction would benefit the public.

**BASED ON THE FOREGOING**, the Court hereby **GRANTS** 3M's Application for a preliminary injunction against Defendant in its entirety, and **ORDERS** as follows:

1. Pursuant to FED. R. CIV. P. 65(a):

a. Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with it, are enjoined during the pendency of this action from using the 3M Marks, and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Marks, for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Plaintiff's 3M-brand N95 respirators, and

b. Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with it, are also enjoined during the pendency of this action from engaging in any false, misleading, and/or deceptive conduct in connection with 3M and its products, including, without limitation, representing itself as being an authorized distributor, vendor, agent, representative, retailer, and/or licensee of 3M and/or any of 3M's products (including, without limitation, 3M-brand N95 respirators); falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products; and falsely representing that 3M has increased the price(s) of its 3M-brand N95 respirators.

2. Pursuant to this Court's equitable powers and discretion, because of 3M's financial situation, it need not post a bond.

3. 3M and/or its authorized representative(s) must serve a copy of this Order on (i) Zenger, LLC or Zenger, LLC's registered agent via overnight mail or courier and/or personal service at 401 Ryland St., Suite 200-A Reno, NV 89502. The foregoing shall constitute proper service and notice of this Order.

4.	Defendant shall, within seven days of service of this Order, submit to the Court a sworn statement confirming and detailing compliance with this Order.

5.	This Court shall retain jurisdiction to hear and determine all matters arising out of, relating to, and/or otherwise concerning the interpretation and/or enforcement of this Order.

6.	The Temporary Restraining Order entered against Defendant in this action on May 19, 2020 (Dkt. No. 29) is vacated and superseded by this Order.

**SO ORDERED** this 5th day of June 2020.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of
Record Distribution to Defendank Puznak by email